CV12 2700

ORIGINAL

Dustin J. O'Brien
36-18 11th Street
Astoria, New York 11106
(718) 736-5515
dustin.obrien@live.law.cuny.edu

## IN THE FEDERAL DISTRICT COURT OF NEW YORK
## EASTERN DISTRICT OF NEW YORK

———————————————————————
)
)
)
DUSTIN J. O'BRIEN,
)
    Plaintiff,  ROSS, J.
)
)
   vs.         **COMPLAINT**
) GO, M.J.  M.J.
EDDIE B. CALVO, in his official capac__,
as Governor of Guam, JOHN CAMACHO,
in his official capacity as Director of the
Guam Department of Revenue and
Taxation, THE GUAM DEPARTMENT
OF REVENUE AND TAXATION, and )
THE UNITED STATES OF AMERICA, )
)
    Defendants. )
———————————————————————)

## COMPLAINT FOR EQUITABLE, DECLARATORY,
## AND INJUNCTIVE RELIEF

Plaintiff, Dustin O'Brien, proceeding *pro se*, files this action against

Defendants, Eddie B. Calvo, in his official capacity as Governor of Guam, John

Camacho, in his official capacity as the Director of the Guam Department of

Revenue and Taxation, the Guam Department of Revenue and Taxation, the United

States of America, and states:

## NATURE OF THE ACTION

[1]     This case is a civil action pursuant to the structural strictures of the United States Constitution's Vesting, Appointments, Excepting, and Take Care clauses of article II, article I's Uniformity clause, and the Due Process and Equal Protection clauses of both the Fifth and Fourteenth Amendments.

[2]     Plaintiff is a bona fide resident of Guam for purposes of territorial income taxation. 26 U.S.C. §§ 937(a), 931(a), 7654(a) (the operative statutes creating the 183 day "presence test"); *see also* I.R.S. Publication 570, "Tax Guide for Individuals With Income From U.S. Possessions, Feb 08, 2012" (explaining the "presence test" – delineating a 183 day temporal rule of physical presence in territories or possessions to determine one's obligation to file an income tax return with the United States Internal Revenue Service or Guam's Department of Revenue and Taxation (hereafter "GDRT")).

[3]     On or about April 14, 2012, plaintiff, presently residing in Astoria, New York, but being obligated by the presence test to file his 2011 territorial taxes with the GDRT, properly executed "Form 1040 Guam Individual Income Tax Return 2011," pursuant to 26 U.S.C. §§ 937(a), 931(a), 7654(a), and 48 U.S.C. § 1421i, the Guam Territorial Income Tax ("GTIT,") and subsequently filed an original copy thereof with the GDRT in a post-paid, properly addressed envelope by first class mail in an official depository under the exclusive care and custody of the U.S. Postal Service within the State of New York.

2

[4]     The Governor of Guam, Eddie B. Calvo, pursuant to his 48 U.S.C. §
1422 authority, "to faithfully execute the laws...of the United States applicable in
Guam," and pursuant to his 48 U.S.C. 1421i(d)(2) authority, executes 48 U.S.C. §
1421i, the GTIT, with the aid of subordinates, including John Camacho, the Director
of the GDRT (hereafter "the Director of the GDRT"), and does so *ultra vires*. 48
U.S.C. § 1421i(c); 11 Guam Code Ann. § 1104(a), (b).

[5]     Congress has conferred upon the Governor of Guam, or his chosen
subordinate, in the present case the Director of the GDRT and the Principal Guam
Territorial Tax Attorney, "the same administrative and enforcement powers and
remedies with regard to the Guam Territorial income tax as the Secretary of the
Treasury, and other United States officials of the executive branch, have with respect
to the United States income tax." 48 U.S.C. § 1421i(d)(2).

[6]     The Governor of Guam is a popularly elected territorial official whose
election does not comport with the Appointments or Excepting clauses, despite his
vested authority to execute and enforce the laws of the United States as a *de facto*
officer of the United States and to appoint inferior officers of the United States to aid
him in executing and enforcing the laws of the United States. *See* U.S. CONST. art. II,
§ 2, cl. 2 (the "Appointments Clause"); 48 U.S.C. § 1422 (empowering the Governor
of Guam to execute the laws of the United States applicable in Guam); 48 U.S.C. §
1421i(c) (empowering the Governor with the extraordinary authority to "duly
authorize [officers or employees of the Government of Guam] either directly, or

3

provisions of the Bill of Rights in Guam as conferred by Congress to Guamanians,

indirectly by one or more redelegations of authority…" [the power to execute and enforce the GTIT]).

[7]     Congress has charged Governor Calvo with the duty of the "faithful execution of the laws of Guam and *the laws of the United States* applicable in Guam," and in doing so has transgressed the separation of powers doctrine by both legislating the unconstitutional manner in which the Governor becomes a *de facto* officer of the United States and simultaneously vesting him with the authority to execute the same laws Congress enacts while completely restricting the President's ability to oversee and take care that the laws of the United States are faithfully executed by the Governor and his subordinates. *see* 48 U.S.C. § 1422 (emphasis supplied); *see also* 48 U.S.C. § 1421i(c), (d)(2).                    •

[8]     Despite plaintiff's residence in the State of New York, where his constitutional rights are unabridged, unlike residents of the Territory of Guam, Congress has forced plaintiff to avail himself, under threat of criminal and civil penalties, to a territorial official whose territorial office can only be characterized as that of a non-appointed and irremovable *de facto* officer of the United States and whose authority derives exclusively from Congress' article IV plenary power to regulate the territories, which has abridged plaintiff's rights under the Vesting, Appointments, Excepting, Take Care, Uniformity, and the Due Process and Equal Protection clauses of both the Fifth and Fourteenth Amendments. *see* U.S. CONST. art. IV, § 3, cl. 2 (the Territories Clause); 48 U.S.C. § 1421b(e), (n), (u) (the applicable provisions of the Bill of Rights in Guam as conferred by Congress to Guamanians,

4

omitting the Vesting, Appointments, Excepting, Take Care, and Uniformity clauses,

but including the Fifth and Fourteenth Amendment's Due Process and Equal

Protection clauses). *see* 48 U.S.C. § 1422a (reserving the power of removal of the

Governor of Guam through a special referendum election where at least two-thirds

of the number of persons voting for the Governor in the last preceding general

election vote in favor of recall and in which those so voting constitute a majority of

all those participating in such referendum election); *see* 26 U.S.C. § 7201 (criminalizing

willful federal tax violations as felonious conduct); *see also* 48 U.S.C. § 1421i(f)

(making 26 U.S.C. § 7201 the standard by which Guamanian or bona fide resident tax

violators are punished); 11 Guam Code Ann. § 22105 (making tax violations

punishable as a misdemeanor); *see also Laguana v. Ansell*, 102 F. Supp. 919, 920

(D.Guam 1952) (noting in dicta that the governments' [both the Government of

Guam as defendant, and the United States, as intervening-defendant] took the

position that Congress, when enacting the GTTT, was exercising its plenary authority

pursuant to article IV to legislate directly for an unincorporated territory).

[9]     As a direct and proximate result of defendants' violation of article II's

Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity

clause, the Due Process and Equal Protection clauses of both the Fifth and

Fourteenth Amendments, and the violation of other rights plaintiff enjoys, plaintiff

has suffered the loss of his constitutional rights and the loss of monies that were

illegally levied, assessed, collected, and taxed, entitling him to equitable, declaratory,

and injunctive relief in the form of an order enjoining defendants from processing

5

plaintiff's income tax return or further levying, laying, assessing, or collecting taxes from plaintiff, an order directing the territorial defendants to return any and all tax monies to plaintiff, including any interest thereon, and an order declaring that (1) 26 U.S.C. §§ 937(a), 931(a), 7654(a) are unconstitutional as applied to bona fide residents of Guam; (2) 48 U.S.C. § 1422 is an unconstitutional violation of article II's Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity clause, and a violation of the Fifth and Fourteenth Amendment's Equal Protection and Due Process clauses; (3) 48 U.S.C. § 1421i(c) is an unconstitutional violation of article II's Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity clause, and a violation of the Fifth and Fourteenth Amendment's Equal Protection and Due Process clauses; (4) 48 U.S.C. § 1421i(d)(2) is an unconstitutional violation of article II's Vesting, Appointments, Excepting, and Take Care clause, article I's Uniformity clause, a violation of the Fifth and Fourteenth Amendment's Equal Protection and Due Process clauses; (5) that the Organic Act of Guam is unconstitutional as a whole because Congress would not have intended for that Act, 48 U.S.C. § 1421, et seq., which lacks a severability clause, to have effect without 48 U.S.C. § 1422, 48 U.S.C. § 1421i(c), (d)(2), or 26 U.S.C. §§ 937(a), 931(a), 7654(a).

[10] Upon information and belief, plaintiff claims that these discrete and unique constitutional questions are ones of first impression that no article III court has ever been presented with.

6

## STATEMENT OF JURISDICTION AND VENUE

[11]     This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, et seq.,

because this action arises under the Constitution and laws of the United States and

concerns a territorial tax, which courts of law have distinguished from a federal tax.

*see generally Bank of America v. Chaco*, 539 F.2d 1226 (9th Cir. 1976).

[12]     This court may also properly exercise equitable jurisdiction over

plaintiff's claims. *see Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)

(equitable relief "has long been recognized as the proper means for preventing

entities from acting unconstitutionally"); *see Bell v. Hood*, 327 U.S. 678, 684 (1946) ("It

is established practice for this [Supreme] Court to sustain the jurisdiction of federal

courts to issue injunctions to protect rights safeguarded by the Constitution."); *see Ex

Parte Young*, 209 U.S. 123, 149, 165, 167 (1908).

[13]     The court may, in practical terms, preside in equity over plaintiff's

federal questions because the alleged constitutional violations have created a "here-

and-now" injury. *Bowsher v. Synar*, 478 U.S. 714, at 727, n.5 (1986) (concluding that a

separation of powers violation can create a "here-and-now" injury where an officer's

presumed desire to avoid removal from office by pleasing Congress creates a

presumed subservient relationship to Congress); *see Morrison v. Olson*, 487 U.S. 654,

727, (1988) (Scalia, J., dissenting) (arguing that the "purpose of the separation and

equilibration of powers in general, and of the unitary Executive in particular, was not

merely to assure effective government but to preserve individual freedom"). *see Public

Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 468 (1989) (Kennedy, J., concurring in the

7

judgment) (arguing that "it remains one of the most vital functions of this [Supreme]
Court to police with care the separation of governing powers…even when…no
immediate threat to liberty is apparent. When the structure fails, liberty is always in
peril").

[14]    The United States Supreme Court has further supported federal courts
treating separation of powers causes of action as analogous to private right causes of
action under the Constitution. *Free Enterprise Fund v. Public Company Accounting Oversight
Board*, 130 S. Ct. 3138, 3151 n.2 (2010) (skeptically addressing the Government's
position that Appointments Clause, or separation of powers claims generally, should
be treated differently than other constitutional claims with regard to a district court's
ability to exercise equitable jurisdiction where Congress violated the Appointments
Clause by restricting the President's ability to remove a principal officer, who in turn
was restricted in his ability to remove an inferior officer).

[15]    Plaintiff claims standing based upon *Glidden Co. v. Zdanok*, 370 U.S.
530, 533 (1961), as well as other well-settled separation of powers actions addressing
prudential and article III standing doctrine concerns. *Cf. Freytag v. Commissioner*, 501
U.S. 868, 880 (1991) (explaining that the structural interests protected by the
Appointments Clause are not those of any one branch of Government but of the
entire Republic). *Cf. Wilson v. Kennedy*, 232 F.2d 153, 153-54 (9th Cir. 1956).

[16]    Venue is proper in this judicial district, the Eastern District of New
York, because a substantial part of the events or omissions giving rise to the claim

8

occurred here and the Governor of Guam and his subordinates are officers of the United States. 28 U.S.C. § 1391(b), (e).

[17]     Venue is proper in this judicial district, the Eastern District of New York, because plaintiff resides in the County of Queens. 28 U.S.C. § 1402(a)(1).

## THE PARTIES

[18]     Plaintiff, Dustin O'Brien, is a former resident of the Territory of Guam, a present resident of Queens County, New York, and a bona fide resident of Guam for purposes of territorial income taxation for the tax-year 2011.

[19]     Defendant, Eddie B. Calvo, Governor of Guam, is named herein solely in his official capacity.

[20]     Defendant, John Camacho, Director of the Guam Department of Revenue and Taxation, is named herein solely in his official capacity.

[21]     Defendant, the Guam Department of Revenue and Taxation, is an agency of the Government of Guam, which is an instrumentality of the United States government. *see Sakamoto v. Duty Free Shoppers*, 764 F.2d 1285, 1288-89 (9th Cir 1985).

[22]     Defendant, the United States of America, is the federal branch of the government of the United States of America.

## STATEMENT OF FACTS

[23]     Pursuant to 26 U.S.C. §§ 937(a), 931(a), 7654(a), the operative statutes creating the "presence test," and 48 U.S.C. 1421i, the GTIT, plaintiff left the jurisdiction of the United States through the State of Hawaii on February 17, 2011,

9

entered the jurisdiction of the Territory of Guam on February 18, 2011, where he resided for approximately 292 days, until returning the to the State of Hawaii on December 6, 2011, where he has not since left the jurisdiction of the United States and has assumed residence in the State and City of New York.

[24]     During plaintiff's residence in Guam he earned income as an employee of the Guam Alternate Public Defender and the Guam Public Defender Service Corporation, whose officers reduced plaintiff's income and transferred that income to the Treasury of Guam, where it is presently held. [See Exhibit "A"].

[25]     Because of decades of fiscal irresponsibility, the general incompetence of territorial officials, Guam's present state of insolvency, and recent comments by Marie Benito, Deputy Director of the GDRT, it is unclear if Plaintiff will be granted his tax-return monies for the year 2011 within the year of 2012, if ever. [See Exhibit "B"]

[26]     The United States Constitution does not distinguish, as Congress presently does, between incorporated, unincorporated, trust, or commonwealth territories. The United States Constitutional only provides for four political entities: the federal government, state governments, territories, and the District of Columbia. U.S. CONST. art. IV, § 3, cl. 2; *Id.* art. I, § 8, cl. 17 (the "Seat of Government" clause).

[27]     The Constitution provides in article IV, § 3, cl. 2, the Territories Clause: "[t]he Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States…"

10

[28]    The Constitution provides in article, II, § 2, the Appointments [and what courts and commentators have called] the Excepting clauses: "[The President] shall nominate, and, by and with the Advice and Consent of the Senate...all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST. art. II, § 2, cl. 2.

[29]    While the Territories Clause gives Congress broad authority to regulate the territories, it cannot be read to explicitly lend Congress the power to usurp the President's Appointments or Excepting clause powers, or the Executive's general function, when carrying out its constitutional mandate "to dispose of and make all needful rules and regulations respecting the territor[ies]..."

[30]    The Guam Organic Act of 1950 was enacted pursuant to Congress' article IV plenary authority to regulate the territories. see Organic Act of Guam, 64 Stat. 384 (1950) (codified as amended at 48 U.S.C. §§ 1421-1424 (1976 & Supp. V 1981)).

[31]    The Organic Act was later amended to allow for a democratically elected governor. see Guam Elective Governor Act, Pub. L. No. 90-497, 82 Stats. 842, 842 (1968) (codified as amended at 48 U.S.C. § 1422 (1988)).

[32]    Prior to 1968, the President of the United States appointed the Governor of Guam with the advice and consent of the United States Senate in

11

conformity with the Appointments Clause. *see* Organic Act of Guam, ch. 512, 64 Stat. 384 (1950) at § 6(a), 64 Stat. at 386.

[33] The GTIT follows the terms of the United States Internal Revenue Code, *mutatis mutandis*. *See* 48 U.S.C. § 1421i(a), (b) and (e); *see Bank of Guam v. United States*, 578 F.3d 1318, 1321 (Fed.Cir. 2009) (discussing "mirroring" process for adapting provision of Internal Revenue Code to create the GTIT); *contra Gumataotao v. Director of Dep't of Rev. & Taxation*, 236 F.3d 1077, 1079-81 (9th Cir. 2001) (discussing how the Tax Reform Act of 1986, §§ 1271, 1277(b), Pub. L. No. 99-514, 100 Stat. 2085, allows Guam to "de-link" from the IRC "upon an exchange of notes" by the governments of Guam and the United States).

[34] The government of Guam collects and disburses the GTIT, relieving the United States Department of the Treasury of the need to collect and appropriate those proceeds. *Bank of America v. Chaco*, 539 F.2d 1226, 1227-28 (9th Cir. 1976); *see also* 48 U.S.C. § 1421i(c).

[35] Correspondingly, Guamanians, or bona fide residents of Guam pursuant to the presence test, like plaintiff, do not pay income tax to the federal government. *Gumataotao*, 236 F.3d 1077, 1079.

[36] Plaintiff is former employee of the Guam Alternate Public Defender, an autonomous agency of the Government of Guam, where he earned income as a bona fide resident of Guam pursuant to the presence test and the GTIT, which income was reduced and placed into the Treasury of Guam. [See Exhibit "A"].

[37]    Upon information and belief, the GDRT is presently processing or will process plaintiff's "Form 1040 Guam Individual Income Tax Return 2011" and in doing so levy, lay, assess, and collect taxes on plaintiff by and through a non-appointed and irremovable *de facto* officer of the United States under the guise of Congress' article IV plenary power to regulate the territories, which will be unsupervised by the President or any other higher executive branch official. [See Exhibits "A" and "C"].

[38]    Plaintiff is no longer a resident of Guam, has no substantial contacts with Guam, and lives and works within the jurisdiction of the City and State of New York.

## CAUSES OF ACTION

### COUNT ONE

### UNCONSTITUIONAL VIOLATION OF THE VESTING CLAUSE
### OF ARTICLE II OF THE UNTIED STATES CONSTITUTION

**(U.S. CONST. art. II, § 2)**

[39]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 38 above and paragraphs 43 through 55 below, as though fully set forth herein.

[40]    Plaintiff alleges that 48 U.S.C. § 1422, *Id.* 1421i, violate the Vesting Clause because each section works to completely restrict the President's ability to oversee and take care that the laws of the United States are faithfully executed and also works to wholly usurp the Executive function and delegate that power to *de facto*

13

officers of the United States who are irremovable and non-appointed by the
President or any other higher executive branch official and who possess the
extraordinary power to appoint inferior officers of the United States.

[41]      Congress may not wholly usurp the Executive function and allow
elected officers of the United States, or officers of the United states who are
appointed by elected officers, who are answerable only to Congress and territorial
electorates, to enforce the criminal and tax laws of the United States. *see Buckley v.
Valeo*, 424 U.S. 1, 132 (1976) (per curiam) (explaining that both principal and inferior
officers are to be appointed by their respective modes of appointment but "[n]o class
or type of officer is excluded because of its special functions") (emphasis supplied);
*see generally Free Enter. Fund*, 130 S. Ct. 3138.

[42]      Congress' isolation of the Governor and his subordinates from
oversight and removal by the President has recently manifested itself in a disturbing
letter to President Barack H. Obama, dated September 23, 2011, where Governor
Calvo claims authority to act as an officer of the United States not pursuant to his 48
U.S.C. § 1422 authority, but pursuant to the Charter of the United Nations and two
resolutions adopted by that international organization, which plaintiff need not
expound upon, but needless to say, Governor Calvo has clearly exhibited his general
disregard for his extraordinary authority to execute the laws of the United States
without a proper appointment. [See Exhibit "D"].

14

## COUNT TWO

### UNCONSTITUIONAL VIOLATION OF THE APPOINTMENTS CLAUSE
### OF THE UNTIED STATES CONSTITUTION

(U.S. CONST. art. II, § 2, cl. 2)

[43]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

[44]    Eddie B. Calvo is the present democratically elected Governor of Guam pursuant to 48 U.S.C. § 1422 and is responsible for the faithful execution of the laws of Guam and *the laws of the United States applicable in Guam* and exercises significant governmental authority when levying, laying, assessing, and collecting taxes *ultra vires* because the Governor lacks a proper appointment by the President with the advice and consent of the United States Senate. 48 U.S.C. § 1422 (emphasis supplied).

[45]    John Camacho is the present Director of the GDRT, who acts as an officer of the United States pursuant to 48 U.S.C. § 1421i when levying, laying, assessing, and collecting taxes, and thereby exercises significant governmental authority *ultra vires* because the Director lacks a proper appointment by the President with the advice and consent of the United States Senate.

[46]    Congress' is empowered to legislate directly for Guam and could amend the Organic Act to remove Governor Calvo or the Director of the GDRT from office if they chose not to execute the laws of the United States in a manner satisfactory to Congress. *see Guam v. Okada*, 694 F.2d 565, 568-69 (9th Cir. 1982) (holding that Congress' plenary power over Guam, as an unincorporated territory,

15

gives Congress the power to legislate directly for Guam, or to establish a government for Guam subject to congressional control, and except as Congress may determine, Guam has no inherent right to govern itself).

[47] Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, "so long as the exercise of that authority does not offend some other constitutional restriction." *INS v. Chadha*, 462 U.S. 919, 941 (1983).

[48] Plaintiff alleges that Guam is nothing more than instrumentality of the federal government and to be treated by courts of law as a federal agency, as the Ninth Circuit Court of Appeals held in *Sakamoto*, and as the United States Supreme Court held in *Wheeler*, which makes Governor Calvo a *de facto* officer of the United States by virtue of his executive office in Guam. *see Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, at 1288-89 (9th Cir. 1985), *cert denied*, 475 U.S. 1081 (1986); *United States v. Wheeler*, 435 U.S. 313, 321-22 (1978); *see e.g. Domenech v. National City Bank*, 294 U.S. 199, 204-05 (1935) (when a territorial government enacts and enforces criminal laws to govern its inhabitants, it is not acting as an independent political community like a State, but as an agency of the federal government).

[49] Plaintiff alleges that the Governor of Guam and the Director of the GDRT's path to becoming a *de facto* officers of the United States are not in conformity with the Appointments or Excepting clauses, nor are their subordinates, and they are presently executing the laws of the United States and thereby exercising significant governmental authority, and illegally levying, laying, assessing, and collecting taxes on plaintiff as well as holding plaintiff criminally liable for any failure

16

to avail himself to the Governor and his subordinates at the GDRT, despite

plaintiff's actual residence in the State of New York and his inability to participate in

democratic processes contemplated by the Framers to ensure faithful execution of

the laws of the United States.

[50]    Plaintiff alleges that 48 U.S.C. § 1422, *Id.* 1421i's mandate that

Governor Calvo faithfully execute the laws of the United States applicable in Guam,

including the GTIT, by and through the GDRT, as if her were the Secretary of the

Treasury or some other executive branch official, makes him by definition a principal

officer of the United States pursuant to art. II, § 2, cl. 2, of the United States

Constitution and requires his appointment by the President with the advice and

consent of the United States Senate.

[51]    Plaintiff alleges that the Governor of Guam and the Director of the

GDRT's path to becoming a *de facto* officers of the United States are not in

conformity with the Appointments or Excepting clauses and they are presently

executing the laws of the United States, exercising significant governmental authority,

and illegally laying, assessing, and collecting taxes on plaintiff, and as a direct and

proximate result of that exercise of authority have violated the Appointments Clause,

abridged plaintiff's constitutional rights, and thereby aggrieved plaintiff. *Marbury v.

Madison*, 5 U.S. 1 Cranch 137, 167 (1803) (explaining that the article II, § 2, cl. 2

power of nomination and appointment is a discretionary political power that the

President alone is to use); *United States v. Germaine*, 99 U.S. 508, 510 (1878) (holding

that there can be but little doubt that all persons who can be said to hold an office

17

under the Constitution were intended to be included in one of the two modes of appointment of article II, § 2, cl. 2); *Springer v. Philippine Islands,* 277 U.S. 189, 202 (1928) (holding that Legislative power, as distinguished from Executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement); *Myers v. United States,* 272 U.S. 52, 135 (1956) (holding that article II grants the President general administrative control of those executing the laws, which excludes the exercise of legislative power by Congress to provide for appointments and removals); *Buckley v. Valeo,* 424 U.S. 1, 132 (1976) (per curiam) (explaining that merely because Congress has been given explicit and plenary authority to regulate a field of activity, it must therefore have the power to appoint those who are to administer the regulatory statute is both novel and contrary to the language of the Appointments Clause); *Bowsher v. Synar,* 478 U.S. 714, 722 (1986) (holding that the Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts); *INS v. Chadha,* 462 U.S. 919, 958-59 (1983) (holding that Congress could not use its plenary authority to regulate immigration to enact a law enabling the House of Representatives to vote as a body to compel the Attorney General to deport an alien whom the executive and judicial branch chose not to expel).

[52] Plaintiff's no longer resides in Guam and is not qualified to vote in a Guamanian gubernatorial elections, which has extinguished any kind of democratic power plaintiff could exercise to compel the Governor of Guam or his subordinates to properly execute the laws of the United States. *see* 3 Guam Code Ann. § 3101.

18

[53]     Governor Calvo and the Director of the GDRT are both completely isolated from removal by the President and Congress may not reserve for itself the power of removal of an officer, charged with executing the laws, except by impeachment. *Bowsher v. Synar*, 478 U.S. 714, 730 (1986); 48 U.S.C. § 1422a (reserving the power of removal of the Governor of Guam through a special referendum election where at least two-thirds of the number of persons voting for the Governor in the last preceding general election vote in favor of recall and in which those so voting constitute a majority of all those participating in such referendum election).

[54]     Governor Calvo and the Director of the GDRT are presently neither removable by the President or any other higher Executive Branch official, but in light of their statutory duties to lay, assess, and collect taxes on plaintiff, and appoint inferior officers to aid them in executing the GTIT, they are principal officers of the United States.

[55]     The Department of Justice has previously objected before Congress to a territorial governor exercising executive authority only properly administered by an officer of the United States appointed under the Appointments Clause. *Political Status of Puerto Rico: Hearings on S. 244 Before the Sen. Comm. on Energy and Natural Resources,* 102nd Congo 190 (1991) (statement of Attorney General Richard Thornburgh), *quoted in* T. Alexander Aleinikoff, *Puerto Rico and the Constitution: Conundrums and Prospects,* 11 CONST. COMMENT. 15, 36 n.85 (1994) (noting that in comments attached to Thornburgh's testimony the Department of Justice argued that a statutory provision granting to the Governor of Puerto Rico the power to force

reconsideration of federal regulations constituted "significant governmental authority under the laws of the United States," as defined by the Supreme Court in *Buckley v. Valeo*, and therefore could only be carried out by a federal official appointed under the Appointments Clause).

## COUNT THREE

## UNLAWFUL VIOLATION OF THE EXCEPTING CLAUSE

### (U.S. CONST. art II, § 2)

[56]     Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 55 above as though fully set forth herein.

[57]     In the alternative, plaintiff alleges that the Governor of Guam and the Director of GDRT are inferior officers who lack proper appointments by the President, a court of law, or a higher executive branch official.

[58]     Governor Calvo and the Director of the GDRT are both completely isolated from removal by the President and Congress may not reserve for itself the power of removal of an officer, charged with executing the laws, except by impeachment. *Bowsher v. Synar*, 478 U.S. 714, 730 (1986); 48 U.S.C. § 1422a (reserving the power of removal of the Governor of Guam through a special referendum election where at least two-thirds of the number of persons voting for the Governor in the last preceding general election vote in favor of recall and in which those so voting constitute a majority of all those participating in such referendum election.)

## COUNT FOUR

### UNLAWFUL VIOLATION OF THE TAKE CARE CLAUSE

#### (U.S. CONST. art II, § 2)

[59]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 60 above as though fully set forth herein.

[60]    Plaintiff alleges that the process and manner in which he is being taxed by the Governor of Guam and the Director of GDRT violates the Take Care clause.

## COUNT FIVE

### UNLAWFUL VIOLATION OF THE UNIFORMITY CLAUSE

#### (U.S. CONST. art I, § 8, cl. 2)

[61]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 60 above as though fully set forth herein.

[62]    Plaintiff alleges that the process and manner in which he is being taxed by the Governor of Guam and the Director of GDRT is so fundamentally unfair and jurisdictionally deficient as to violate the Uniformity Clause.

## COUNT SIX

### UNLAWFUL VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSES

#### (U.S. CONST. amend. V; 48 U.S.C. § 1421b(e), (u))

[63]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 62 above as though fully set forth herein.

[64]    Plaintiff alleges that the process and manner in which he is being taxed by the Governor of Guam and the Director of GDRT is so fundamentally unfair and

jurisdictionally deficient as to violate the Due Process clauses of the Fifth and

Fourteenth Amendment to the United States Constitution.

### COUNT SEVEN

### UNLAWFUL VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSES

### (U.S. CONST. amend. V; 48 U.S.C. § 1421b(n))

[65]     Plaintiff realleges, adopts, and incorporates by reference paragraphs 1

through 64 above as though fully set forth herein.

[66]     Plaintiff alleges that the process and manner in which he is being taxed

by the Governor of Guam and the Director of GDRT is so fundamentally unfair and

jurisdictionally deficient as to violate the Equal Protection Clause of the Fifth

Amendment to the United States Constitution.

[67]     Plaintiff alleges that his rights under the Equal Protection clauses of

the Fifth and Fourteenth Amendments have been violated by Congress' classification

of him as a quasi-resident of Guam forcing him to avail himself to the Governor and

his subordinates, which has abridged his constitutional right to be taxed by properly

appointed officers of the United States instead of a usurper and his subordinates

whose loyalties possibly lie with territorial residents and even more remotely

members of Congress, but almost certainly not the President.

22

who is charged with "[a]ssist[ing] the Director and *I Maga'lahen Guahan* [the Governor

## COUNT EIGHT

## UNCONSTITUTIONAL DELAGATION

### (U.S. CONST. art I, § 1)

[68]    Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 67 above as though fully set forth herein.

[69]    The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

[70]    Congress has provided in the GTIT that "[a]ny function needful to the administration and enforcement of the income-tax laws in force in Guam…shall be performed by any officer or employee of the government of Guam duly authorized by the Governor (either directly, or indirectly by one or more redelegations of authority) to perform such function. 48 U.S.C. § 1421i(c).

[71]    Congress has further provided in the GTIT that "[n]eedful rules and regulations not inconsistent with the regulations prescribed under [26 U.S.C. § 7654(e)]…for enforcement of the Guam Territorial income tax shall be prescribed by the Governor." 48 U.S.C. § 1421i(d)(2).

[72]    Because Guam has enacted a statute that allows for the Governor to appoint the Director of the GDRT, who in turn has the authority to appoint an officer of the United States known as the Principal Guam Territorial Tax Attorney, who is charged with "[a]ssist[ing] the Director and *I Maga'lahen Guahan* [the Governor of Guam] in administering and enforcing the Guam Territorial Income Tax," Congress has unconstitutionally delegated legislative power to an entity outside the Legislative Branch by empowering the Legislature of Guam to enact laws that are

23

only properly enacted by Congress with presentment to the President. 11 Guam Code Ann. § 1106.1(1), (2), (3), (5), (6); *see generally* GUAM PUB. L. NO. 28-175:3 (2007).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that the Court:

A.      make an order and judgment that 48 U.S.C. § 1422 is unconstitutional because Congress has violated plaintiff's rights under article II's Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity and Vesting clauses, and charged the Governor of Guam and his subordinates with executing the laws of the United States without the Governor's election or his subordinates appointments comporting with art. II, § 2 of the United States Constitution and similarly violated plaintiff's rights under the Fifth and Fourteenth Amendment's Due Process and Equal Protection clauses;

B.      make an order and judgment that 48 U.S.C. § 1421i(c) is unconstitutional because Congress has violated plaintiff's rights under article II's Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity and Vesting clauses, and charged the Governor of Guam and his subordinates with executing the laws of the United States without the Governor's election or his subordinates appointments comporting with art. II, § 2 of the United States Constitution and similarly violated plaintiff's rights under the Fifth and Fourteenth Amendment's Due Process and Equal Protection clauses;

C.      make an order and judgment that 48 U.S.C. § 1421i(d)(2) is unconstitutional because Congress has violated plaintiff's rights under article II's

Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity and

Vesting clauses, and charged the Governor of Guam and his subordinates with

executing the laws of the United States without the Governor's election or his

subordinates appointments comporting with art. II, § 2 of the United States

Constitution and similarly violated plaintiff's rights under the Fifth and Fourteenth

Amendment's Due Process and Equal Protection clauses;

      D.     make an order and judgment that 26 U.S.C. §§ 937(a), 931(a), 7654(a)

are unconstitutional because Congress has violated plaintiff's rights under article II's

Vesting, Appointments, Excepting, and Take Care clauses, article I's Uniformity and

Vesting clauses, and charged the Governor of Guam and his subordinates with

executing the laws of the United States without the Governor's election or his

subordinates appointments comporting with art. II, § 2 of the United States

Constitution and similarly violated plaintiff's rights under the Fifth and Fourteenth

Amendment's Due Process and Equal Protection clauses;

      E.     make an order and judgment enjoining the Governor of Guam and any

of his subordinates from exercising any authority pursuant to 48 U.S.C § 1422 or

*Id.* § 1421i;

      F.     make an order and judgment that the Organic Act of Guam is

unconstitutional because Congress would not have intended for that act, 48 U.S.C. §

1421, et seq., which lacks a severability clause, to have effect without 48 U.S.C. §

1422, 48 U.S.C. § 1421i(c), (d)(2), or 26 U.S.C. §§ 937(a), 931(a), 7654(a);

G.     make an order and judgment directing defendants to return any and all tax monies plaintiff is entitled to and any interest thereon;

H.     award plaintiff costs and attorneys' fees pursuant to any applicable statute or authority;

I.     order any other relief that the Court deems just and proper.


Respectfully submitted this 30th day of May 2012


Dustin J. O'Brien
36-18 11th Street
Astoria, New York 11106
(718) 736-5515
dustin.obrien@live.law.cuny.edu

# EXHIBIT A

PUBLIC DEFENDER SERVICE CORPORATION

STATEMENT OF EARNINGS
AS OF PPE - 07/16/11

```
EMPLOYEE'S NUMBER : APD18
            NAME  : DUSTIN J. O'BRIEN
            RATE  : 9.60
     DIRECT DEPOSIT: CCSE FCU
```

|                               | REGULAR  | Y-T-D    |
| ----------------------------- | -------- | -------- |
| REGULAR EARNING               | 76.80    |          |
| A/L EARNINGS                  | 0.00     |          |
| D-A/L EARNINGS                | 0.00     |          |
| S/L EARNINGS                  | 0.00     |          |
| D-S/L EARNINGS                | 0.00     |          |
| HOLIDAY HOURS                 | 76.80    |          |
| OTHER                         | 0.00     |          |
| RETROACTIVE PAY               | 0.00     |          |
| LESS: OVERPAYMENT             | 0.00     |          |
| GROSS EARNINGS                | 153.60   | 4,761.60 |
| TAXES/RETIREMENT:             |          |          |
|    WITH-HOLDINGS | 6.49   | 492.13   |
|    RETIREMENT FUND | 7.68 | 238.08   |
|    MEDICARE    | 2.23     | 69.07    |

ADJUSTED EARNINGS AFTER TAXES/RETIRE:   137.20

```
DEDUCTIONS:
     SC HSA 2000 MED               4.62
     SC DENTAL                     7.38
                               -----------
```

NET PAY-DIRECT DEPOSIT               125.20
                               ===========

| LEAVE STATUS  | USED | ACCRUED | BALANCE |
| ------------- | ---- | ------- | ------- |
| ANNUAL        | 0    | 4       | 22 0 *paid out 7/22/11* |
| SICK          | 0    | 4       | 6 *w/ Direct Deposit* |
| DONATED A/L   | 0    |         | 0       |
| DONATED S/L   | 0    |         | 0       |

# EXHIBIT B



# First refunds out June 8: Filed after February? You might not get a check

Residents who filed their tax returns in January and February most likely will see their tax refunds in the mail around June 8.

The cutoff date for paying tax refunds using $60 million in bond funding was still unclear yesterday, but taxpayers who filed during the first two months of the year most likely will receive refund checks first, said Marie Benito, deputy director at the Department of Revenue and Taxation.

Those who filed in March may see refunds, depending on the date they filed, Benito said.

Approximately $105 million is owed to taxpayers for tax year 2011 refunds.

Gov. Eddie Calvo confirmed yesterday that the local government successfully secured bond funding that will pay about $60 million of the 2011 tax refunds.

The Calvo administration successfully borrowed $108.7 million from the bond market at an interest rate of 4.6 percent, lower than the 4.9 percent rate from last year's bond.

The latest bond proceeds will transfer to the government of Guam on June 6, which will then lead to the printout and mailing of tax refund checks. A more precise cutoff date for who gets tax refunds will be known after the checks have been printed, Benito said.

The department has stated that there will be no need to line up for the refunds, which was the case last December.

Some residents who were at Rev and Tax yesterday said the refunds would be great, if they're among the recipients.

Paul Lizama, 28, said he doesn't think he'll get a refund because he filed late. But if he did get a tax refund, he would pay off his student loan.

"It'd be nice to pay off my loan. But unfortunately, I filed late and it's a first-come, first-serve basis," he said.

He hopes that the government will be able to pay the remaining tax refunds later this

Advertisement

Case 1:12-cv-02700-ARR-MDG   Document 1   Filed 05/30/12   Page 32 of 38 PageID #: 332



year.

"I'm hopeful I'll get it this year. They did it before and I hope they can do it again," Lizama said.

Benito said the administration is trying to identify sources of funds for paying the rest of the refunds that will remain outstanding after the $60 million has been exhausted. The payments will be issued in increments, as funding sources come up, Benito said.

The governor, speaking from Okinawa, said he hopes the administration will be able to clear the remaining tax refund obligations by this year.

Liz Silvia, 43, said she wasn't sure if she'd get her refund, but hopes it will come.

"I filed as early as I could, but I'm not sure if it was early enough," she said.

She hopes to use the refund to pay off bills and maybe treat her family this summer. She would like to take her family to water parks on island and to Talofofo Falls.

"We don't have the money to splurge on those things, so it'd be nice to treat the family," she said.

Bruce Dinsman, a licensed appraiser at Pacific Island Appraisals, said he doesn't expect a refund this year.

"I'm late in filing," Dinsman said.

But he said he tries to file his tax return in

a way that the government doesn't owe him, or he doesn't owe the government, so he normally doesn't expect a refund.

"We're not part of the tax refund game," he said.

Ike Santos, 54, said he expects a refund in the mail.

"I filed very early so I think I'll get it," Santos said.

He will use the money to pay off medical bills and if he has extra, he wants to buy new tires for his car.

"This refund will help a lot. I have so many bills and I can't really afford to pay all of them," Santos said.

Santos said he has faith that the government will pay out the rest of the refunds this year.

"There are many people who need the money. I hope they can get it," he said.

Advertisement

Case 1:12-cv-02700-ARR-MDG Document 1 Filed 05/30/12 Page 32 of 38 PageID #: 332





**Zoom**
Tax Specialist Diana Reyes, right, assists customer Bruce Dinsman at the Income Tax and Processing window in the Department of Revenue and Taxation in Barrigada Heights yesterday. / Rick Cruz/Pacific Daily News/rmcruz@guampdn.com

**TAX REFUNDS Q&A**

•When will the bond money be here?

By the first week of June.

•When can people expect their tax refund checks?

Starting June 8.

•How much was borrowed?

About $108 million.

•How much of that will go to tax refunds?

The bond will pay $60 million in tax refunds. Only tax year 2011 refunds will be paid with the bond money.

•How will refunds be distributed?

By mail.

•What will the rest of the bond money pay for? About $25 million of the bond money would be used to pay debts owed by the Guam Department of Education and Guam Memorial Hospital to the Government of Guam Retirement Fund. Approximately $18 million will help pay for the government's health insurance payments for local government employees, retirees and their dependents.

More

Advertisement

Print Powered By FormatDynamics

# EXHIBIT C

Form **1040** — Department of Revenue and Taxation — **Guam Individual Income Tax Return** (99) **2011** — OMB No. 1545-0074 — DRT Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2011, or other tax year beginning _____, 2011, ending _____, 20 ___

**Your first name and initial:** Dustin J  **Last name:** OBrien

If a joint return, spouse's first name and initial / Last name

**Mailing address (number and street). If you have a P.O. box, see instructions.**
4 Golfside Circle  — Apt. no.

**City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).**
Canandaigua, NY 14424

Foreign country name / Foreign province/county / Foreign postal code

See separate instructions.
Your social security number
Spouse's social security number
▲ Make sure the SSN(s) above and on line 6c are correct.

**Filing Status** — Check only one box.
1 ☑ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here ▶
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**
6a ☑ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse
c Dependents:
(1) First name Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit (see instructions)

If more than four dependents, see instructions and check here ▶ ☐
d Total number of exemptions claimed

Boxes checked on 6a and 6b: 1
No. of children on 6c who: • lived with you • did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above
Add numbers on lines above ▶ 1

**Income**
Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld. (copy-B)
If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 4735 00 |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions 15a | b Taxable amount | 15b | |
| 16a | Pensions and annuities 16a 475 00 | b Taxable amount | 16b | 425 00 |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits 20a | b Taxable amount | 20b | |
| 21 | Other income. List type and amount Settlement of a Claim | 21 | 3000 00 |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | 8160 00 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | 839 00 |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37 | 7321 00 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions. — Cat. No. 11320B — Form **1040** (2011)

Form 1040 (2011)  Page **2**

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | 38 | 7321 | 00 |
|---|---|---|---|---|---|---|
| | 39a | Check { ☐ You were born before January 2, 1947, ☐ Blind. ☐ Spouse was born before January 2, 1947, ☐ Blind. } Total boxes checked ▶ 39a | | | | |
| Standard Deduction for— | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b☐ | | | | |
| • People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 40 | 5800 | 00 |
| | 41 | Subtract line 40 from line 38 | | 41 | | |
| | 42 | Exemptions. Multiply $3,700 by the number on line 6d | | 42 | 3700 | 00 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | 0 | 00 |
| | 44 | Tax (see instructions). Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ 962 election | | 44 | 0 | 00 |
| • All others: | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | 45 | | |
| Single or Married filing separately, $5,800 | 46 | Add lines 44 and 45 ▶ | | 46 | | |
| | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | | |
| Married filing jointly or Qualifying widow(er), $11,600 | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | | |
| | 49 | Education credits from Form 8863, line 23 | 49 | | | |
| Head of household, $8,500 | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | | |
| | 51 | Child tax credit (see instructions) | 51 | | | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | | | |
| | 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | 54 | | |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | | 55 | | |
| Other Taxes | ★ 56 | Self-employment tax. Attach Schedule SE | | 56 | See Below | |
| | ★ 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 ★ | | 57 | See Below | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 58 | 43 | 00 |
| | 59a | Household employment taxes from Schedule H | | 59a | | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | 59b | | |
| | 60 | Other taxes. Enter code(s) from instructions | | 60 | | |
| | 61 | Add lines 55 through 60. This is your total tax ▶ | | 61 | 43 | 00 |
| Payments | 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | 554 | 00 | |
| | 63 | 2011 estimated tax payments and amount applied from 2010 return | 63 | | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | 64a | | | |
| | b | Nontaxable combat pay election | 64b | | | |
| | 65 | Additional child tax credit. Attach Form 8812 | 65 | | | |
| | 66 | American opportunity credit from Form 8863, line 14 | 66 | | | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | | | |
| | 68 | Amount paid with request for extension to file | 68 | | | |
| | ★ 69 | Excess social security and tier 1 RRTA tax withheld ★ | 69 | See Below | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | | |
| | 71 | Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | 71 | | | |
| | 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments ▶ | | 72 | 554 | 00 |
| Refund | 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | | 73 | | |
| | 74a | Amount of line 73 you want refunded to you. | | 74a | 511 | 00 |
| | 75 | Amount of line 73 you want applied to your 2012 estimated tax ▶ | 75 | | | |
| Amount You Owe | 76 | Amount you owe. Subtract line 72 from line 61. Make check payable to Treasurer of Guam ▶ | | 76 | | |
| | 77 | Estimated tax penalty (see instructions) | 77 | | | |

**Third Party Designee** — Do you want to allow another person to discuss this return with the DRT (see instructions)? ☑ Yes. Complete below.  ☐ No
Designee's name ▶   Phone no. ▶   Personal identification number (PIN) ▶

**Sign Here**
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See instructions. Keep a copy for your records.
Your signature _Dustin O'Brien_  Date 4/13/12  Your occupation Paralegal  Daytime phone number (718) 736-5515
Spouse's signature. If a joint return, both must sign.  Date  Spouse's occupation  If the DRT sent you an Identity Protection PIN, enter it here (see inst.)

**Paid Preparer Use Only**
Print/Type preparer's name  Preparer's signature  Date  Check ☐ if self-employed  PTIN
Firm's name ▶   Firm's EIN ▶
Firm's address ▶   Phone no.

★ **Lines 56, 57, 69 must be filed with IRS Austin, Texas 73301-0215**

Form **1040** (2011)

# EXHIBIT D



**EDDIE BAZA CALVO**
Governor

**RAY TENORIO**
Lieutenant Governor

*Office of the Governor of Guam*

September 23, 2011

The Honorable Barack Obama
President of the United States of America
1600 Pennsylvania Ave.
Washington, DC 20500

Dear President Obama:

Guam has proven its ability of self-government since electing both its executive and legislative leaders since 1970. Generations of Guamanians have proudly waved the flag of freedom. Countless men and women have served and given their lives in defense of our great nation. To this day, we remain proud patriots.

Guam is a progressive American territory in the Asia Pacific region. We are one of 16 territories identified as "non self-governing" by the United Nations, the last remaining in the western Pacific region. Self-determination has been a substantial issue raised within serious political and social conversation.

The Calvo Tenorio administration is committed to pursuing a political status that speaks to the will of the people.

Pursuant to Chapter XII, Article 73 of the UN charter and UN resolutions 1514 and 1541, I officially announce that Guam's Commission on Decolonization, an official organization recognized and endorsed by this administration, mandated to fully understand the voice and will of the people, is embarking on a quest for political destiny.

As we move forward with this most important right to self-determination, I respectfully request the Obama Administration's continued support for Guam and her people during this significant endeavor in our history.

The image is at top center showing the Governor's Seal.



**EDDIE BAZA CALVO**
Governor

**RAY TENORIO**
Lieutenant Governor

*Office of the Governor of Guam*

We hope that Guam will be afforded the same opportunities as all those who have sought to determine their own political statuses before us.

Sincerely,

**EDDIE BAZA CALVO**

Cc:    The Honorable Hillary Clinton, Secretary of State
The Honorable John Boehner, Speaker of the House of Representatives
The Honorable Harry Reid, United States Senate Majority Leader
His ExcellencyBan Ki-moon, United Nations Secretary General
Laura Vaccari, United Nations, Decolonization Unit Chief