D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

DUSTIN J. O'BRIEN,

                Plaintiff,

   -against-

EDDIE B. CALVO, JOHN CAMACHO, GUAM
DEPARTMENT OF REVENUE AND TAXATION,
LEGISLATURE OF GUAM, and THE UNITED STATES
OF AMERICA,

                Defendants.

---------------------------------------------------------------- X

12-CV-2700 (ARR)(MDG)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

MEMORANDUM AND
ORDER

ROSS, United States District Judge:

      Plaintiff, a resident of New York, challenges the Island of Guam's authority to withhold

income tax from paychecks he received while working in Guam. Plaintiff seeks a judgment from

this court invalidating the Act of Congress that establishes Guam's representative government

and ordering return of his tax monies. The problem with plaintiff's suit is that the money

withheld from his paychecks already has been returned. Despite multiple and prolix filings,

plaintiff has failed to establish any injury in fact that would confer standing to bring this case in

federal court. Therefore, for reasons explained more fully below, the court finds that the action

presents no genuine case or controversy, and grants defendants' motion to dismiss. As further

amendment of the pleadings would be futile, the court denies leave to amend.[1]

---

[1]The court also denies plaintiff's request for a hearing and his request to file an additional
brief. The court also denies defendants' motion to transfer venue.

## BACKGROUND

Plaintiff filed this action on May 30, 2012, Dkt. #1, and shortly thereafter filed his first amended complaint ("FAC"), Dkt. #4. The first amended complaint alleged that plaintiff resided in Guam for approximately 292 days in 2011. FAC ¶ 25. While there, plaintiff earned income as a paralegal for two of Guam's public defender agencies. Id. ¶ 26. As a result, plaintiff was considered a "bona fide resident" of Guam for purposes of the Guam Territorial Income Tax ("GTIT"), and taxes were withheld from plaintiff's paychecks. Id. ¶¶ 19, 26, Ex. A. Plaintiff alleged that due to the "fiscal irresponsibility" and "general incompetence of territorial officials," it was "unclear if Plaintiff [would] be granted his tax-return monies for the year 2011 within the year 2012, if ever." Id. ¶ 27. Upon his return to the Eastern District of New York, plaintiff brought suit seeking to have this court declare unconstitutional the Organic Act of Guam ("OAG"), 48 U.S.C. § 1421, the statute from which the Guam government derives its authority. Id. at 26-27. He also sought an order and judgment directing the governor of Guam "to return any and all tax monies plaintiff is entitled to and any interest thereon." Id. at 27. Plaintiff attached a copy of his 2011 tax form, showing that he was owed an outstanding tax refund of $511 from the Guam Department of Revenue and Taxation. Id., Ex. C.

On November 4, 2012, defendants Calvo, Camacho, Guam Department of Revenue and Taxation, and Legislature of Guam (collectively "Guamanian defendants") filed a motion to transfer venue to the District of Guam. Dkt. #18. Plaintiff filed a lengthy brief in response, Dkt. #30, to which he attached a copy of a check for an "income tax refund" from the Government of Guam in the amount of $516.36, id., Ex. A. Before the court adjudicated the venue transfer motion, the Guamanian defendants also filed a motion to dismiss pursuant to Rule 12(b)(6). Dkt.

2

#27. The United States subsequently filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Dkt. #49, which the Guamanian defendants joined, Dkt. #45, 47. The United States argued that plaintiff's claim was moot, because the tax monies in question had been returned to plaintiff with interest. Mem. of Law in Supp. of Def. United States' Mot. to Dismiss Pl.'s First Amend. Compl. 14-15 ("USA Mot. to Dismiss") (citing Dkt. #30, Ex. A). The United States argued that, in the alternative, plaintiff's suit should be dismissed for failure to state a claim. Id. 18-34.

After the motion to dismiss was fully briefed, plaintiff informed the court that he planned to serve a proposed second amended complaint ("SAC") on defendants. Dkt. #53. The court permitted plaintiff to file the proposed SAC along with a motion for leave to amend, and directed the defendants to file any opposition papers with the court. Dkt. #54. Plaintiff's amended (and much expanded) complaint conceded that the treasurer of Guam issued plaintiff a tax refund check in the amount of $516.36, though plaintiff alleged he "has not accepted or cashed [it] because the disbursement is void for illegality." SAC ¶ 24.

Nevertheless, plaintiff argued in his response brief (and alleged in the SAC) that he had standing to maintain his suit for several reasons: First, plaintiff argued that the court's review of the motion to dismiss was limited to the facts as asserted within the four corners of the FAC. Mem. of Law in Opp'n to the United States' Mot. to Dismiss & in Supp. of Pl.'s Cross-Mot. for Conversion 14 ("Pl's Opp'n Mem."). He further argued that prior to moving to Guam, he liquidated 401k and 401a accounts, thus incurring an early distribution penalty of $43.00, over which the Guamanian defendants retained unlawful possession. Id. 15; accord SAC ¶¶ 32-33 (alleging plaintiff is "presently deprived" of $43.00). Third, plaintiff argued that he had

sustained a so-called "here-and-now" injury, which, he claims, the Supreme Court has recognized as conferring standing in separation of powers challenges. Id. 21-23 (citing Bowsher v. Synar, 478 U.S. 714, 727 n.5 (1986)). In addition, in the proposed SAC, plaintiff alleged that the government of Guam had "perpetual authority" under the GTIT to initiate a court proceeding against him for collection of taxes, and that he could "at any future time . . . [be] investigated, audited, or prosecuted by Guamanian officials." SAC ¶¶ 22-23. Further, he asserted that he intended to return to Guam at some point in the future, which would again render him subject to the authority of Guamanian officials. Id. ¶¶ 70-73.

The United States and the Guamanian defendants opposed plaintiff's motion for leave to amend. Dkt. #55, 57. Plaintiff filed a memorandum of law in reply to each response, Dkt. #58, 59, and also requested oral argument on the motions, or, in the alternative, leave to file yet another brief addressing matters the United States argued plaintiff abandoned in his reply to the motion to dismiss. Dkt. #60. The court now resolves all outstanding motions.

## DISCUSSION

I.     *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although still subject to the facial plausibility standard, a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see

4

Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Hidalgo v. Kikendall, No. 09-Civ-7536, 2009 U.S. Dist. LEXIS 66020, at *7-8 (S.D.N.Y. July 22, 2009). Nevertheless, pro se plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." Geldzahler v. N.Y. Med. College, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Fed. Practice § 12.34[4][a] at 12–72.7 (2005)).

As the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on facts existing at the time the complaint was filed. Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

In general, "Rule 12(b)(6) does not give the district court authority to consider matters outside the pleadings." LaBounty v. Adler, 933 F.2d 121, 123 (2d. Cir. 1991). For the purposes of evaluating subject matter jurisdiction, however, the court may consider materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

II.    *Venue Transfer Motion*

The Guamanian defendants sought transfer of venue pursuant to 28 U.S.C. § 1406,

arguing that venue in the Eastern District of New York was improper under 28 U.S.C. § 1391.

Dkt. #18. It is unclear whether they adhere to that position, since they have joined the United

States' motion to dismiss. The United States notes that venue here is proper, at least as to it,

pursuant to 28 U.S.C. § 1391(e)(1) ("A civil action in which a defendant is . . . the United States,

may, except as otherwise provided by law, be brought in any judicial district in which (A) a

defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the

claim occurred, or a substantial part of property that is the subject of the action is situated, or (C)

the plaintiff resides if no real property is involved in the action.") (emphasis added). The

Guamanian defendants have not withdrawn their motion, however. Consequently, the court has

examined the venue issue and found that venue is proper in the Eastern District of New York.

The OAG itself requires that "the District Court of Guam shall have exclusive original

jurisdiction over all judicial proceedings in Guam . . . with respect to the Guam Territorial

income tax." 48 U.S.C. § 1421i(h)(1) (emphasis added). However, as this proceeding is not in

Guam, that provision appears on its face not to apply. The following subsection provides:

> Suits for the recovery of any Guam Territorial income tax alleged to have been
> erroneously or illegally assessed or collected, or of any penalty claimed to have
> been collected without authority, or of any sum alleged to have been excessive or
> in any manner wrongfully collected, under the income-tax laws in force in
> Guam . . . may, regardless of the amount of claim, be maintained against the
> government of Guam subject to the same statutory requirements as are applicable
> to suits for the recovery of such amounts maintained against the United States in
> the United States district courts with respect to the United States income tax.

Id. § 1421i(h)(2). In other words, the OAG instructs this court to look to relevant provisions of

the Internal Revenue Code ("IRC") when considering any tax or penalty alleged to be unlawfully

withheld under the GTIT.

6

The IRC, 26 U.S.C. § 7422, governs civil actions for refunds, and cross-references to 28 U.S.C. § 1346 "[f]or jurisdiction of United States district courts." 26 U.S.C. § 7422(k). That provision grants original jurisdiction to the district courts over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). Venue for such civil actions may be prosecuted by individual plaintiffs only "in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1); see also Scott v. United States, 449 F.2d 1291, 1292 (8th Cir. 1971) (per curiam) (" It is clear that suits for refund of income taxes may be filed only against the United States and that venue must be laid in the judicial district in which the individual bringing the action resides."). Plaintiff resides in Queens County, New York. FAC ¶ 19. Accordingly, venue is proper in the Eastern District of New York. The Guamanian defendants' motion to transfer venue is denied.

III.    *Standing*

    a.    Legal principles

"[T]he irreducible constitutional minimum of standing derives from Article III, section 2 of the U.S. Constitution, which limits federal judicial power to cases and controversies." Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin., --- F.3d ---, No. 11-422-cv, 2013 WL 1007677, at *5 (2d Cir. Mar. 15, 2013) (alteration in original) (internal quotation marks omitted). To establish that a case or controversy exists so as to confer standing under Article III, a plaintiff must satisfy three elements: "(a) the plaintiff must suffer an 'injury in fact,' (b) that injury must be 'fairly traceable' to the challenged action, and (c) the injury must be likely to be 'redressed by a favorable decision' of the federal court." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S.

555, 560-61 (1992)). An "injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotation marks omitted); accord City of L.A. v. Lyons, 461 U.S. 95, 101-02 (1983). Such injury must be causally connected to the conduct of defendant complained of; it cannot be "th[e] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (alterations in original) (internal quotation marks omitted). The Supreme Court has recently explained that a future injury must be "certainly impending" and that a "speculative chain of possibilities" will not suffice. Clapper v. Amnesty Int'l USA, --- U.S. ---, 133 S. Ct. 1138, 1150 (2013).

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). A case becomes moot "when the issues presented in a case are no longer live or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982) (internal quotation marks omitted); accord Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994). "[W]hen interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur," the case is moot and the federal court lacks subject matter jurisdiction. Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998). In order to fall within the recurrence exception, "a party must demonstrate that (1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 647-48 (internal quotation marks omitted).

b.      Plaintiff's claims for relief fail to establish standing

Here, plaintiff concedes that the Guamanian defendants have returned a sum of money to

him greater than the tax withheld from his paycheck. Dkt. #30, Ex. A; SAC ¶ 24; id., Ex. B.

Although this fact was not contained in the FAC, the court may consider it solely for the purpose

of determining the standing question. See, e.g., Teleservices Jamaica, Ltd. v. W. Telemarketing

Corp. Outbound, 395 F. Supp. 2d 24, 26 (S.D.N.Y. 2005) ("On a motion to dismiss for lack of

standing, the district court is authorized to consider matters outside the pleadings and to make

findings of fact when necessary.") (internal quotation marks omitted). It is plain from the check

that plaintiff's $511 overpayment has been returned with interest. Accordingly, his claim for

monetary relief is moot.[2]

Plaintiff's attempt to salvage the claim for monetary relief by reference to a $43.00 early

withdrawal penalty the Guamanian defendants are still holding is unavailing. Plaintiff did not

allege any facts with regard to this penalty in the FAC. However, even considering it as a fact

outside the pleading for purposes of determining subject matter jurisdiction, the claim fails to

confer standing. This is because the IRC, incorporated by reference by the OAG, 48 U.S.C. §

---

[2]Plaintiff attempts to cast aspersion on the tax refund because, he claims, it is "likely that
[the Guamanian defendants] . . . manually overrode the [Department of Revenue and Taxation]'s
computer system's 'first in, first out' mechanism for processing tax refund payments" in order
expedite plaintiff's refund and moot his claim. SAC ¶ 27. Even assuming that plaintiff's
allegations of the Guamanian defendants' motives are true, such motives would not preserve a
live controversy where interim relief has eradicated the effect of the challenged conduct.
Plaintiff's claim that the check is somehow "void for illegality," SAC ¶ 24, is conclusory and
totally unsupported by any allegations of fact. Plaintiff simply has no way around the bottom
line; that the money he claims he is owed has been returned to him, thus mooting his claim for
monetary relief. See Drs. Hill & Thomas Co. v. United States, 392 F.2d 204, 205 (6th Cir. 1968)
(suit for tax refund moot where objective was recovery of money and IRS tendered more than
plaintiff sought).

1421i(h)(2), provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added). The Second Circuit has repeatedly held that "a duly filed administrative claim for a refund under section 7422(a) is a jurisdictional prerequisite to a federal action for a refund." Donnelly v. United States, No. 1:11-CV-135 (NAM/DRH), 2012 WL 1717217, at *3 (N.D.N.Y. May 15, 2012) (citing Kirsh v. United States, 258 F.3d 131, 132 (2d Cir.2001); United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994)); accord Magnone v. United States, 902 F.2d 192, 193 (2d Cir. 1990) (per curiam) ("[A] taxpayer must bring the claim for refund to the IRS as a prerequisite to jurisdiction for the suit in federal court."); Altman v. Connally, 456 F.2d 1114, 1115-16 (2d Cir. 1972) ("Insofar as the complaint seeks a refund for any revenue taxes alleged to have been erroneously or illegally assessed, the complaint failed to allege, as required by I.R.C. § 7422(a), that a claim has been duly filed with the Internal Revenue Service . . . ."). Plaintiff has failed to allege that he has filed any administrative claim to recover his $43.00.[3] In the absence of such an allegation, the court lacks subject matter jurisdiction over his claim for monetary relief.

---

[3]Under the OAG, such a request would be made to the Governor of Guam or his delegate. See 48 U.S.C. § 1421i(d)(2) ("The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax."). This exhaustion requirement would also apply with equal force to plaintiff's claim for the $511 withholding if defendants had not already returned the money.

Apart from his claim for monetary relief, plaintiff asserts no injury in fact suffered as a result of any action by defendants. With regard to the Guamanian defendants, plaintiff states, "Plaintiff is no longer a resident of Guam, has no substantial contacts with Guam, and lives and works within the jurisdiction of the City and State of New York." FAC ¶ 39. Plaintiff alleges no facts at all that would support a claim of actual injury stemming from conduct by the United States.

c.    Bowsher does not confer any special standing

Plaintiff argues that the Supreme Court's decision in Bowsher v. Synar, 478 U.S. 714 (1986), confers a unique form of standing in the context of separation of powers challenges. This argument is unavailing. In Bowsher, members of Congress, the National Treasury Employees Union, and the union's members brought suit challenging a provision of the Balanced Budget and Emergency Deficit Control Act of 1985 that vested power in the Comptroller General to make recommendations for spending reductions to the President. Id. at 719. The plaintiffs challenged the Comptroller General's authority under the statute in part as a violation of the separation of powers, since it vested executive functions in an official who was removable not by the President, but only by a joint resolution of Congress or by impeachment. Id. at 720-21. With respect to standing, the Court held,

> It is clear that members of the Union, one of whom is an appellee here, will sustain injury by not receiving a scheduled increase in benefits. This is sufficient to confer standing under . . . Article III. We therefore need not consider the standing issue as to the Union or Members of Congress.

Id. at 721.

Thus, contrary to plaintiff's argument, Bowsher did not confer standing based on what he

11

calls a "here-and-now" injury unique to separation of powers challenges. Plaintiff's argument derives entirely from a footnote addressing an argument that the Bowsher plaintiffs' challenge was not ripe until the Comptroller General was actually removed by Congress. SAC ¶ 93. The Court rejected this view because the threat of removal by Congress created "here-and-now subservience" by the Comptroller General. 478 U.S. at 727 n.5. Plaintiff's expansion of this dictum to create a novel form of injury, not recognized in any subsequent Supreme Court case, that may substitute for the actual injury required for Article III standing is a misreading of Bowsher. Cf. Clinton v. City of N.Y., 524 U.S. 417, 429-36 (1998) (finding plaintiffs had separate actual injury sufficient to confer standing in separation of powers challenge); Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 264-65 (1991) (same); see also Bond v. United States, --- U.S. ---, 131 S. Ct. 2355, 2365 (2011) ("If the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object.") (emphasis added). Plaintiff's argument that separation of powers challenges are somehow exempt from normal Article III standing requirements is further undermined by the fact that the law of Article III standing is itself "built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper, 133 S. Ct. at 1146 (citing Summers v. Earth Island Inst., 555 U.S. 488, 492-93 (2009)). Plaintiff's assertion of standing based on a "here-and-now" injury therefore fails.

IV.     *Motion for Leave to Amend*

"[L]eave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). This relaxed standard

applies with particular force to pro se litigants. See Gomez v. USAA Fed Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) ("[T]he court should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). However, it is also "axiomatic that leave to amend need not be granted if to do so would be futile." Cruz v. Garden of Eden Wholesale, No. 12 Civ. 5188(BMC)(MDG), 2012 WL 5386046, at *2 (E.D.N.Y. Oct. 26, 2012) (citing Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998)); see also Pangburn, 200 F.3d at 70-71. Here, plaintiff has already amended his complaint once. See FAC. Moreover, further amendment would be futile because (1) the SAC presents no new facts to the court that would confer standing upon plaintiff to pursue this action, and (2) even if plaintiff did have standing, his underlying claim is wholly without merit.

      a.    The SAC presents no new facts that would confer standing

      Plaintiff's new allegations in the SAC do not cure the jurisdictional defects of his prior complaints. First, although he realleges that he is "no longer a resident of Guam, has no substantial contacts with Guam, and lives and works within . . . New York," SAC ¶ 86, plaintiff states that he wishes to return to Guam, perhaps to practice law or to run for office, id. ¶¶ 70-73. These allegations appear designed to fit plaintiff's claim for monetary relief into the exception to mootness for claims "capable of repetition, yet evading review," Irish Lesbian & Gay Org., 143 F.3d at 647, Plaintiff's vague desire to return to Guam someday is insufficient, however, to show "a reasonable expectation," id. at 648 (emphasis added), that plaintiff will be subject to the same action. See also Lujan, 504 U.S. at 564 ("Such 'some day' intentions-without any description of concrete plans, or indeed even any specification of when the some day will be-do

not support a finding of the 'actual or imminent' injury that our cases require."). Moreover, plaintiff has alleged no facts to suggest that the "challenged action [is] in duration too short to be fully litigated prior to its cessation," id., – the "yet evading review" component of the exception. The SAC thus adds no facts that challenge the inescapable conclusion that plaintiff's claim for tax monies is moot.

Plaintiff also suggests he has been separately injured because "[t]he Organic Act of Guam never afforded Plaintiff an opportunity to participate in any election for any public official of the Government of Guam." SAC ¶ 15. Plaintiff notes that the governor and legislature of Guam are popularly elected. Id. ¶¶ 41, 65. He alleges that he has consistently voted in every presidential election since his eighteenth birthday, id. ¶ 60, and "would have voted" in upcoming elections in Guam had he stayed there, id. ¶ 68. However, plaintiff in fact "never registered to vote" in Guam because such registration would have been "unnecessary or futile" since the next elections took place after plaintiff intended to leave Guam. Id. ¶ 65. Therefore, plaintiff complains, as a current resident of New York, plaintiff has no "democratic power over the Governor [of Guam] or his subordinates." Id. ¶ 67.

As this set of allegations makes clear, any lack of "democratic power" plaintiff has over popularly-elected Guamanian officials has nothing whatsoever to do with the Organic Act of Guam. Plaintiff's inability to vote in Guamanian elections stems from the fact that he simply was not a resident of Guam when the elections occurred. Plaintiff's claim thus fails both on the injury and causation elements of standing: As plaintiff has no legally protected interest in voting in an election of a territory of which he is not a resident, there can be no injury. As plaintiff's inability to vote in Guam's elections is not fairly traceable to the Organic Act of Guam, there is

14

no causal link between the complained-of action and the alleged injury.[4] Further, plaintiff's suggestion that he "<u>could</u> . . .[be] investigated, audited, or prosecuted by Guamanian officials," <u>id.</u> ¶ 23 (emphasis added), is precisely the type of speculative, conjectural injury that the Supreme Court has repeatedly held does not confer standing. <u>See, e.g., Lyons,</u> 461 U.S. at 109-10.[5] Accordingly, the SAC advances no new facts that would establish actual injury necessary to invoke this court's jurisdiction to decide cases or controversies under Article III. Indeed, plaintiff's new claims border on frivolousness.

      b.    <u>Amendment is futile as plaintiff's underlying claim is without merit</u>

      Although permitting plaintiff to amend the complaint further would be futile because any amendment would fail to establish standing, even assuming the presence of standing <u>arguendo,</u> amendment still would be futile because the SAC fails to state a claim.

      Plaintiff seeks to challenge the doctrine of territorial incorporation, established in <u>The Insular Cases,</u> which applies constitutional rights differently to incorporated and unincorporated territories of the United States. <u>See generally</u> Robert A. Katz, <u>The Jurisprudence of Legitimacy: Applying the Constitution to U.S. Territories,</u> 59 U. Chi. L. Rev. 779, 781-84 (Spring, 1992).

---

[4]The absurdity of plaintiff's argument can be easily seen by analogy: If a New York resident travels to New Jersey and purchases goods, he must pay New Jersey sales tax. <u>See</u> N.J. Stat. Ann. § 54:32B-3. Similarly, non-citizens must pay federal income taxes for income earned in the United States, though they cannot vote in federal elections. <u>See, e.g.,</u> 26 U.S.C. § 1441 (withholding of tax on nonresident aliens). No one would seriously argue that such taxes are invalid because these taxpayers lack "democratic power" over the officials in charge. The court need not look beyond the complaint, as the United States suggests, USA Mot. to Dismiss 17 & n.7, to see that this litigation is a flight of fancy.

[5]For the reasons discussed above, the allegations in the SAC with respect to plaintiff's $43.00 penalty also fail to confer standing because the claim for repayment of the penalty must be dismissed for want of subject matter jurisdiction.

The Supreme Court upheld the doctrine of territorial incorporation in <u>Balzac v. Porto Rico</u>, 258 U.S. 298, 312-13 (1922), and has repeatedly reaffirmed its continuing validity, <u>see, e.g.</u>, <u>Boumediene v. Bush</u>, 553 U.S. 723, 756-59 (2008); <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 268-69 (1990); <u>Reid v. Covert</u>, 354 U.S. 1, 13-14 (1957). Moreover, the Ninth Circuit, which sits in review of the District Court of Guam, has repeatedly upheld the authority of Guamanian officials to collect taxes under the OAG. <u>See, e.g.</u>, <u>Gumataotao v. Dir. of Dep't of Revenue & Taxation</u>, 236 F.3d 1077, 1081-82 (9th Cir. 2001); <u>Gov't of Guam v. Koster</u>, 362 F.2d 248, 251 (9th Cir. 1966); <u>Phelan v. Taitano</u>, 233 F.2d 117, 118 (9th Cir 1956); <u>Wilson v. Kennedy</u>, 232 F.2d 153, 154-55 (9th Cir. 1956). Accordingly, if this court were to reach plaintiff's claims on the merits, which it does not, it would follow the binding precedent of the Supreme Court and persuasive authority of the Ninth Circuit and dismiss pursuant to Rule 12(b)(6).

Because even a liberal reading of the proposed SAC gives no "indication that a valid claim might be stated," <u>Gomez</u>, 171 F.3d at 795 (internal quotation marks omitted), leave to amend is denied.

## CONCLUSION

For the foregoing reasons, the motion for leave to amend is denied and the case is dismissed with prejudice. The court denies plaintiff's request for a hearing and his request, in the

16

alternative, to file yet another brief. The Guamanian defendants' motion to transfer venue is denied. The Clerk of Court is directed to enter judgment accordingly and close the case.

s/Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: March 26, 2013
Brooklyn, New York

**Service List:**

Dustin J. O'Brien

30 West 60th Street, Apt.# 8L
New York, NY 10023
718-736-5515
Fax: 212-213-1093
Email: dustin.obrien@live.law.cuny.edu